UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) ) | 2:23-CR-00072-DCLC-CRW |
| v. | ) ) | |
| STEPHEN LEON WILLIAMS, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the United States' Motion in Limine [Doc. 49]. The Defendant responded [Doc. 73]. The Court heard oral argument on the motion on February 7, 2025. The matter is therefore ripe for resolution.

**I.   BACKGROUND**

The United States' motion alleges the following facts.[1] At around 8:00 p.m. on January 2, 2023, Defendant Stephen Leon Williams drove a black car to the west side of Kingsport, Tennessee, where he met three men. [Doc. 49, pg. 2]. Williams parked the car, approached the men, and spent about ten minutes there smoking methamphetamine with them. [*Id.*]. Williams then returned to his car and drove away. [*Id.*].

---

[1] Defendant's response does not contain a statement of facts, so the Court uses the Government's narrative as background here. The Court finds it important to note that its use of the Government's version of the facts in no way constitutes a factual finding. The Government, of course, bears the burden of proof at trial.

A few minutes later, one of the men—Mark Miller—walked toward a nearby alleyway. [*Id.*]. Shortly thereafter, gunshots exploded through the night; the sound came from the direction Miller had walked moments before. [*Id.* at 3].

Law enforcement responded to the shooting. When they arrived on the scene, they found Miller dead from apparent gunshot wounds. [*Id.* at 3]. An autopsy later revealed that Miller sustained three gunshot wounds; the one projectile recovered from his body was consistent with a .32 caliber bullet. [*Id.* at 6]. Officers began their investigation. Witnesses claim to have seen a man matching Williams' description leaving the scene shortly after the gunshots. [*Id.* at 3]. Further, surveillance video showed a man matching Williams' description enter a black car parked less than a block away from the shooting. [*Id.* at 3].

One witness—a neighbor—reported hearing the gunshots. [*Id.* at 3]. At the same time, the neighbor heard glass shatter in their home. [*Id.* at 3]. The neighbor investigated the sound of broken glass and found a spent bullet lying beneath a shattered window in the home. [*Id.* at 3]. When officers interviewed the witness, they photographed the bullet. [*Id.* at 3]. Later, forensic testing determined that the bullet was fired from a .32 caliber firearm. [*Id.* at 3].

Officers began searching for a murder suspect matching the description they garnered from their investigation. [*Id.* at 3]. About 90 minutes after the shooting, an officer observed a black Chrysler 300 driving near a city park. [*Id.* at 3]. The officer initiated a traffic stop, suspecting that the driver was the suspect from Miller's shooting. The officer cautiously approached the car and found that Williams was the driver and sole occupant. [*Id.* at 3–4]. Williams exited the car at the officer's request. [*Id.* at 4]. The officer saw in the car—in plain view—a small caliber bullet in the driver's side floorboard and a crystal substance in the driver's seat. [*Id.* at 4].

The officer detained Williams and called for the vehicle to be towed. [*Id.* at 4]. Officers transported both Williams and the car to the Kingsport Police Department. [*Id.* at 4]. When they arrived, officers searched the vehicle. Officers photographed the vehicle and seized evidence relevant to their investigation, including: (1) approximately .22 grams of methamphetamine; (2) an R&P .32 caliber bullet located on the driver's side floorboard; and (3) a torch lighter, which the Government maintains is commonly employed in the use of illegal narcotics. [*Id.* at 4].

Meanwhile, officers led Williams to an interview room at the police department. [*Id.* at 5]. Investigators obtained Williams' personal information, advised him of his *Miranda* rights, and explained to him that he was not, at that time, under arrest. [*Id.* at 5]. Officers interviewed Williams; he denied involvement in the shooting but admitted that he was present near the scene that day. [*Id.* at 5]. Officers seized Williams' clothing for testing, and after he undressed, discovered a glass pipe where Williams had been seated. [*Id.* at 5]. Williams denied the pipe was drug paraphernalia and maintained that he used it to take cancer medication. [*Id.* at 5]. The seized clothing later tested positive for gunshot residue. [*Id.* at 5].

During their interview, Williams consented to officers searching his residence. [*Id.* at 6]. When officers searched the residence, they found several varieties of ammunition, including: (1) a 50-round box of Blazer 9mm ammunition; (2) two rounds of Sig 9mm Luger ammunition; and (3) 13 total rounds of PMC .32 SW L ammunition in two locations. [*Id.* at 6].

On August 13, 2024, the grand jury returned a second superseding indictment charging Williams with two counts of possession of ammunition by a convicted felon and one count of possession of methamphetamine. [Doc. 44]. In advance of trial, the United States filed the instant Motion in Limine [Doc. 49] asking the Court to admit several categories of evidence.

II. ANALYSIS

The United States' motion [Doc. 49] asks the Court to admit the following evidence: (1) Williams' status as a suspect in Miller's murder; (2) the fact that Williams' clothing from the night of the shooting contained gunshot residue; (3) the spent .32 caliber bullet recovered from the residence near the murder scene; and (4) the drug paraphernalia recovered from Williams' car and person in the interrogation room. [*Id.* at 7].

The Government argues that all these items of evidence are admissible as intrinsic to the crime charged. [*Id.* at 7–14]. The Government's argument here is that "it would be impossible to 'tell the story' of the charged crimes without discussing Defendant's status as a suspect in the murder of Mark Miller and the surrounding circumstances." [*Id.* at 8]. This is so, says the Government, because the fact that Williams was a murder suspect—and the evidence from the murder investigation—"explains why law enforcement initiated the traffic stop that recovered one of the bullets that [Williams] is charged with illegally possessing, and provides critical context for law enforcement's actions thereafter." [*Id.* at 8]. Alternatively, the Government maintains that evidence of the spent bullet, gunshot residue, and drug paraphernalia are admissible under Fed. R. Evid. 404(b). [*Id.* at 14–20].

In his responsive pleading, Williams objected only to the evidence that he was a murder suspect at the time of his arrest. [Doc. 73, pg. 2–3]. Williams maintains that this evidence is inadmissible because it is irrelevant, not intrinsic, and its probative value is substantially outweighed by a risk of unfair prejudice. [*Id.* at 3].

At oral argument, the parties changed their positions slightly. Williams and the Government have agreed that the Government may introduce evidence that Williams was initially detained in connection with a shooting investigation, but not that Williams was a murder suspect. Further, Williams' counsel agreed that the gunshot residue evidence should be admitted, and told

the Court that he intends to cross-examine the pertinent witnesses as a matter of trial strategy. Williams' counsel also agrees that the spent .32 caliber bullet recovered from a nearby residence is admissible. Of course, Williams' agreement with the Government that the evidence is admissible does not necessarily make it so. *See United States v. Laurent*, 603 F. Supp. 3d 1247, 1305 n. 5 (S.D. Fla. 2022) (noting that a court can exclude inadmissible evidence as unfairly prejudicial without the objection of a party); *Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 669–70 (7th Cir. 2003) ("[A] judge is entitled to exclude unreliable evidence even if no party objects.").

### A. Intrinsic evidence

Intrinsic evidence—also sometimes referred to as *res gestae*, inextricably intertwined evidence, or background evidence—"allows the trial court to admit evidence regarding a defendant's *unindicted* criminal activity when that activity is intrinsic or inextricably intertwined with the charges named in the indictment." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (internal citations and quotations omitted). And while *res gestae* evidence does not implicate Fed. R. Evid. 404(b), "the concerns that prompted Rule 404(b) are very real, and a party may not rely on the *res gestae* exception as a backdoor to circumvent its goals." *United States v. Clay*, 667 F.3d 689, 697–98 (6th Cir. 2012). Accordingly, intrinsic evidence must have "a causal, temporal, or spatial connection with the charged offense." *Churn*, 800 F.3d at 779 (internal citations and quotations omitted). Some categories that may satisfy these requirements "include evidence that is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Clay*, 667 F.3d at 698.

Even if evidence is properly considered intrinsic, it may nonetheless be inadmissible if its probative value is substantially outweighed by a danger of unfair prejudice. *United States v. Peete*,

781 Fed. App'x 427, 433 (6th Cir. 2019). Fed. R. Evid. 403 provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice [or] confusing the issues." "The risk of unfair prejudice is defined as the undue tendency to suggest a decision based on improper considerations." *United States v. Betro*, 115 F.4th 429, 449 (6th Cir. 2024) (internal citations and quotations omitted). The Sixth Circuit has explained, albeit in the context of prior-act evidence, that "this can happen when the . . . evidence so shocks the conscience that the jury may decide that the defendant is a bad person and deserves to be convicted." *United States v. Hazelwood*, 979 F.3d 398, 412 (6th Cir. 2020). "A jury is more likely to engage in this type of judgment when the . . . evidence portrays the defendant as having committed an appalling act." *Id.*

### 1. Status as a Murder Suspect

At the outset, the Court notes that even though the parties have agreed that the Government will not introduce it, evidence that Williams was suspected of the murder—although possibly intrinsic—would be inadmissible under Rule 403. *See Peete*, 781 Fed. App'x at 433 (noting that intrinsic evidence remains subject to a Rule 403 analysis). As the parties' agreement confirms, the prejudicial effect of such evidence is immense, and its probative value is limited to its tendency to explain the origin of the investigation and the actions of law enforcement handling the case.

The Court agrees with the parties, however, that the Government may introduce evidence that Williams was initially detained as part of an investigation into a shooting. This evidence explains why Williams was initially stopped and the actions law enforcement took in conducting their investigation. If the Court excluded this evidence, the Government would be forced to begin their story of the charged offenses in the middle of the actual narrative. This evidence is the beginning of the narrative, and therefore "completes the story of the charged offense[s]." *Clay*,

667 F.3d at 698. It also "arises from the same events as the charged offense[s]" because the event that prompted the instant charges was the shooting of Mark Miller. Without the shooting, Williams would not have been detained, and law enforcement would not have searched his car and residence. Evidence that Williams was initially detained as a suspect of a shooting is therefore properly admitted as intrinsic. Limiting testimony to Williams being detained as part of the investigation into a shooting strikes an acceptable balance between the unfair prejudice of identifying him as a suspect in a murder investigation and placing his detention in context of the investigation that evening. Accordingly, the Government is limited to introducing evidence that law enforcement initially detained and investigated Williams as a suspect as part of a shooting investigation. Evidence of the details of the shooting are not relevant to these charges and will not be admitted.

### 2. Evidence of Gunshot Residue on Williams' Clothing

The parties also agree that evidence that Williams' clothing tested positive for gunshot residue is admissible. Williams' counsel told the Court at oral argument that he intends to cast doubt on this evidence as part of his trial strategy. The Court need not decide whether this evidence is admissible as intrinsic because it is admissible as circumstantial evidence that Williams possessed ammunition.

The Sixth Circuit has previously acknowledged that gunshot residue is circumstantial evidence of possession of a firearm. *See United States v. Stafford*, 721 F.3d 380, 394 (6th Cir. 2013) (noting that a dispute over expert testimony regarding gunshot residue "goes to the admissibility of circumstantial evidence."). In the same case, the Sixth Circuit upheld a district court's admission of gunshot residue evidence in a prosecution for unlawful possession of a firearm by a convicted felon. *Id.* at 395.

The same considerations from *Stafford* are present here, though the alleged possession is of ammunition, not a firearm. The gunshot residue evidence here is relevant circumstantial evidence that Williams possessed ammunition. Gunshot residue on Williams' clothing makes it more probable that he fired a gun, and to do so he would have necessarily needed to possess ammunition. To be sure, there are alternate explanations—Williams may simply have been near a firearm when it discharged—but that is a matter for cross examination, and ultimately a question of fact for the jury to decide.

Further, the Court finds that the probative value of this evidence is not substantially outweighed by a risk of unfair prejudice. Evidence of gunshot residue present on Williams' clothing is not likely to inflame, excite, or confuse the jury. The evidence is therefore admissible to prove Williams' possession of ammunition.

### 3. Spent Bullet

The Court need not decide whether the spent .32 caliber bullet recovered at a residence near the shooting is admissible as intrinsic because it is inadmissible under Rule 403. *See Peete*, 781 Fed. App'x at 433 (noting that intrinsic evidence remains subject to a Rule 403 analysis). At the outset, the Court notes that Williams is not charged with possessing the recovered bullet. Therefore, its probative value is limited to its tendency to show that Williams possessed other, similar ammunition, or to show Williams' knowledge of the ammunition charged. But for either of those inferences to hold, the Government would have to show that Williams is the one who fired it. Under Rule 403, this evidence is not relevant to whether Williams possessed ammunition in his vehicle or at his house. Moreover, though Williams has not lodged an objection to its admissibility, the Court finds that admitting this evidence would unduly prejudice Williams and confuse the issues the jury is called upon to decide. Whether Williams fired the bullet into the

residence—a proposition the Government is not prepared to prove—is not before the Court. In short, because Williams is not charged with the shooting, the Court finds that the risk of unfair prejudice substantially outweighs the limited probative value of the recovered bullet. As such, it will not be admitted to prove that Williams possessed ammunition and methamphetamine.

The Government maintains that even if the Court finds the above evidence inadmissible as intrinsic, the Court should still admit it under Fed. R. Evid. 404(b).[2] The Court disagrees. The spent bullet is inadmissible under Rule 403.

Fed. R. Evid. 404(b) provides that evidence of other crimes or bad acts is inadmissible to prove that the person acted in accordance with their character. The evidence may be admissible, however, for another purpose, such as to prove "motive, opportunity, intent, preparation, plan knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In the Sixth Circuit, a three-part test governs the admissibility of Rule 404(b) evidence.

> Prior to admitting Rule 404(b) evidence the district court must: (1) make a preliminary finding as to whether sufficient evidence exists that the prior act occurred; (2) determine whether the other act is admissible for one of the proper purposes outlined in Rule 404(b); and (3) apply Rule 403 balancing to determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice or the other concerns embodied in Rule 403.

*United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010).

The third requirement disposes of the matter here. For the reasons outlined above, the Court finds that the probative value of the recovered bullet is substantially outweighed by a risk of unfair prejudice. Because this is the case, the evidence fails the *Allen* test, and it is inadmissible.

### 4. Drug Paraphernalia

---

[2] Because the Court ruled that the drug paraphernalia is admissible as intrinsic evidence, the Court need not address the argument that the evidence is admissible under Rule 404(b). Further, the Government does not ask the Court to admit evidence that Williams was a murder suspect under Rule 404(b).

The final evidence that the Government seeks to introduce as intrinsic is drug paraphernalia recovered from Williams' car at the traffic stop and his person in the interrogation room.

The drug paraphernalia recovered in the car and on Williams' person can be admitted as intrinsic evidence. The Sixth Circuit has endorsed the admission of drug-related evidence as intrinsic when defendants are charged with the unlawful possession of a firearm. *See United States v. Till*, 434 F.3d 880, 883–85 (6th Cir. 2006). Further, the drug paraphernalia is "inextricably intertwined" with the narrative of Williams' charged conduct. *Churn*, 800 F.3d at 779. It was recovered in the car and on his person during the investigation. Excluding the evidence would require the Government to "sanitize" the narrative of the investigation, as they would have to omit important details from the facts of the case. *Gibbs*, 797 F.3d at 422.

This evidence also satisfies Rule 403's requirements. The probative value of the evidence is high. It is directly probative of Williams' possession of narcotics, and it tends to show dominion and control over the car where officers found one round of ammunition. The risk of unfair prejudice, on the other hand, is low. Williams is charged with unlawful possession of ammunition and narcotics. Both of those offenses are more serious than possession of drug paraphernalia. Further, drug paraphernalia is more mundane than evidence of murder; it does not inflame the emotions of the jury in the same way. Thus, the Rule 403 balancing test weighs in favor of admitting the drug paraphernalia.

Because the drug paraphernalia is intrinsic to the crimes charged, and because it satisfies the requirements of Rule 403, the Court will allow the evidence at trial.

## III. CONCLUSION

In accordance with the above order, the United States' Motion [Doc. 49] is **GRANTED IN PART** and **DENIED IN PART.**

SO ORDERED:

s/ Clifton L. Corker<br>
United States District Judge